UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IBEW HEALTH & WELFARE TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE ELECTRIC, INC., a Washington Corporation, <br><br> Defendant. | CASE NO. C04-0953-MAT <br><br> ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

INTRODUCTION

Plaintiffs Local 191 I.B.E.W. Health & Welfare Trust Fund, Local 191 Money Purchase Plan, National Electric Benefit Fund, Labor Management Cooperation Committee Fund, and District 9 Pension Plan ("the Trusts" or plaintiffs) move the Court for summary judgment against defendant Allstate Electric, Inc. (Dkt. 26.) The Trusts are tax-qualified, jointly administered union-management employee benefit trust funds, organized and operated under the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. § 1001, et seq., and created under Section 302(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c). They provide health, welfare, dental, and pension benefits to eligible employees and their dependents.

This matter was brought pursuant to ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2),

ORDER
PAGE -1

and Sections 301 and 302(c) of the LMRA, 29 U.S.C. §§ 185 and 186(c). ERISA obligates participating employers to make contributions to a multi-employer trust fund in accordance with the contract and trust agreement. *See* ERISA Section 515, 29 U.S.C. § 1145. ERISA also provides specific mandatory remedies for delinquent contributions, including, in addition to the unpaid contributions, liquidated damages, interest, attorney's fees, and costs. *See* 29 U.S.C. § 1132(g)(2). The Trusts here seek to collect unpaid employee benefit contributions, liquidated damages, interest, audit fees, costs, and attorney's fees.

## BACKGROUND

Defendant's association with plaintiffs began with the signing of a Letter of Assent on September 18, 2000. (Dkt. 29, Ex. A.) This document bound defendant to make monthly employee benefit contributions to the Trusts in accordance with current and subsequent labor agreements, and was to remain in effect until terminated through written notice provided "at least one hundred fifty (150) days prior to the then current anniversary date" of the applicable labor agreement. *Id*. The Inside Wireman Collective Bargaining Agreement ("CBA") was the labor agreement in effect at that time. *Id*. Pursuant to Article 1.01 of the CBA:

> This Agreement shall take effect August 31, 2000 and shall remain in effect until August 31, 2003, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter from August 31 through August 30 of each year unless changed or terminated in the way later provided herein.

*Id*. Article 1.02 of the CBA requires "written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter[]" from an employer desiring to terminate the agreement. *Id*.

In an August 23, 2001, letter to plaintiffs, defendant stated the following:

> This is to inform you that we will be closing down our business as of September 1st, 2001. I have decided to go back to work for The union instead of owning a business. We are requesting you release our Benefit bond account at Pacific Northwest Bank in the amount of $10,000.00.

(*Id*., Ex. B.) On September 26, 2001, plaintiffs released all interest in defendant's bond account

ORDER
PAGE -2

and treated defendant as a defunct employer. (*Id*. at ¶ 7.)

## ARGUMENTS

Plaintiffs assert that defendant engaged in fraudulent misrepresentation in securing the termination of the CBA given that defendant did not cease doing electrical business as of August 23, 2001, and later, in November 2002, began bidding on jobs within plaintiffs' jurisdiction.[1] Plaintiffs maintain that, but for their reasonable reliance on defendant's representation that it was going out of business, they would not have permitted termination of defendant's obligations prior to the expiration of the CBA. They argue that defendant's notice should, therefore, be declared void. *See Rozay's Transfer v. Local Freight Drivers, Local 208 Int'l Bhd of Teamsters*, 850 F.2d 1321, 1335 (9th Cir. 1988) (stating that section 301 of the LMRA "allows courts to fashion remedies even though lacking in express statutory sanction, and that 'the range of judicial inventiveness [under section 301] will be determined by the nature of the problem.")

Plaintiffs further aver that, even absent fraudulent misrepresentation, defendant's August 23, 2001 letter does not operate to terminate the CBA prior to that agreement's August 30, 2003 expiration date. (*See* Dkt. 29, Ex. A (Article 1.01 of the CBA states that the agreement "shall remain in effect until August 31, 2003")). Plaintiffs note that an employer is bound to the terms of a CBA for any contribution obligation owing, and that unilateral termination or modification of the terms of a CBA is a violation of the National Labor Relations Act. Plaintiffs assert that the termination notice provisions in the Letter of Assent and CBA apply only after the agreement expires and if given in a timely manner, and that these provisions only prevent the CBA from automatically renewing under the evergreen clause in Article 1.01. Plaintiffs conclude that, for all of these reasons, defendant is bound to make its contribution obligation at least through August 30, 2003.

Finally, plaintiffs argue that, if the Court finds defendant's notice of termination void,

---

[1] Plaintiffs note that their audit shows defendant worked over 2,600 hours from August 2001 through December 2003 within plaintiffs' jurisdiction. (*See* exhibit to Dkt. 28.)

ORDER
PAGE -3

defendant is also bound to make contributions beyond the CBA's August 30, 2003 expiration date. In support, plaintiffs point to the evergreen clause in Article 1.01 of the CBA, stating that the CBA "shall continue in effect from year to year thereafter from August 31 through August 30 of each year unless changed or terminated in the way later provided herein." *Id*. Plaintiffs assert that, because the only notice of termination from defendant is fraudulent, defendant is bound to contribute after August 30, 2003.

Defendant maintains that it was not a party to any CBA with plaintiffs during the period for which plaintiffs seek contributions. In support, defendant points to its August 23, 2001 letter and the fact that plaintiffs executed the release of defendant's bond pursuant to that letter. Defendant notes that, although administratively dissolved by the State of Washington in June 2001, the company posted its last payroll for finishing its last project on October 31, 2001. Defendant explains that its owner/operator, Tom Jones, took up other employment from approximately December 1, 2001 through July 2002. Facing unemployment in July 2002, Jones applied for reinstatement of the company, which, in November 2002, obtained its first residential electrical job since terminating its relationship with plaintiffs. At that point, defendant did not renew its agreement with plaintiffs or employ any union workers.

Defendant argues that plaintiffs fail to support their accusation of fraud and fail to provide any legal basis for the proposition that two parties to a contract may not voluntarily terminate that agreement. Defendant also asserts that plaintiffs waived any claims by failing to bring a grievance within fifteen days pursuant to Article 2.18 of the CBA. (*See* Dkt. 29, Ex. A.)

Defendant further argues that, even if the Court finds that the parties failed to effectively terminate their contract, the August 23, 2001 letter constitutes sufficient notice of intent to terminate the CBA as of August 31, 2002, the date defendant construes as the CBA's "anniversary date." In support, defendant points to language within the Letter of Assent, stating that it "shall remain in effect until terminated by the undersigned employer giving written notice . . . at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor

ORDER
PAGE -4

agreement." *Id*. Defendant asserts that any ambiguity as to the correct number of days or the definition of anniversary date must be construed against plaintiffs as the drafter of this document.

In their reply, plaintiffs assert that defendant's failure to close down constitutes a failure to perform and, thus, a breach of contract. Plaintiffs also assert that defendant is bound to pay contributions and assessed fees under the theory of promissory estoppel.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *See Celotex*, 477 U.S. at 322-23. In this case, defendant does not allege, and the Court does not find, any issue of material fact.

As an initial matter, the Court finds that plaintiffs fail to support summary judgment on the basis of any of the contractual arguments raised. Although plaintiffs utilize the phrase "fraudulent misrepresentation," they fail to meet or even assert the standard for such a claim. *See Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 850 F.2d 1321, 1326 (9th Cir. 1988) (fraudulent misrepresentation requires a showing that a party "knowingly made a false representation concerning a material fact with the specific intent to deceive" and that the complaining party "detrimentally relied upon the false representation.") Additionally, because plaintiffs first raised breach of contract and promissory estoppel arguments in their reply, defendant had no opportunity to respond to these arguments. Moreover, the facts do not support plaintiffs' contention that defendant unilaterally terminated the CBA. However, for the reasons described below, the Court nonetheless finds plaintiffs entitled to unpaid benefit contributions and any associated damages for

the period through August 30, 2003.

While plaintiffs released all interest in defendant's bond account and construed defendant's August 23, 2001 letter as a notice of termination, there is no evidence to support the conclusion that plaintiffs agreed to an *early* termination of the CBA. Pursuant to Article 1.01, the CBA was to "remain in effect until August 30, 2003," and to continue thereafter on a yearly basis unless changed or terminated as required by the subsequent provision. (Dkt. 29, Ex. A.) That subsequent provision, Article 1.02, required written notice 90 days prior to either the August 30, 2003 expiration date or any yearly anniversary date occurring thereafter. *Id.*[2] Contrary to defendant's contention, the reference to the "then current anniversary date" in the Letter of Assent cannot reasonably be read to alter the August 30, 2003 termination date expressly stated in the CBA; instead, it refers to the time period after that date. *Id.* Accordingly, because there is no evidence to support an early termination of the CBA, defendant is obliged to pay any contributions owing up until August 30, 2003.

However, the Court does not find defendant responsible for contributions beyond August 30, 2003. Plaintiffs correctly note that an evergreen clause obligates an employer to continue to make contributions absent notification that complies with the requirements of the CBA. *See*, *e.g.*, *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (termination notice must comply with terms of CBA in order to be effectual). Yet, plaintiffs fail to show that defendant's August 23, 2001 letter did not suffice to terminate the CBA as of August 30, 2003. Indeed, plaintiffs admittedly construed this letter as a timely notification pursuant to Article 1.02 of the CBA. (*See* Dkt. 29, Ex. A (requiring "written notification at least 90 days prior to the expiration date of the Agreement or any

---

[2] It is not clear whether the Letter of Assent's requirement for 150 days notice or the CBA's requirement for 90 days notice would control. (Dkt. 29, Ex. A.) However, because defendant's August 23, 2001 letter was dated well prior to either of these deadlines, this ambiguity is not relevant to the Court's conclusion as to the proper resolution of this matter.

ORDER
PAGE -6

anniversary date occurring thereafter."))[3]  Because the August 23, 2001 letter provided timely notice of defendant's desire to terminate, it complied with the CBA and sufficed to terminate the agreement as of August 30, 2003.[4]

## CONCLUSION

For the reasons described above, the Court GRANTS summary judgment in plaintiffs' favor. Pursuant to ERISA, the Trusts are entitled to collect unpaid employee benefit contributions through August 30, 2003, as well as liquidated damages, interest, attorney's fees, and costs. *See* 29 U.S.C. § 1132(g)(2). However, because the audit information provided by plaintiffs exceeds the time period found applicable by the Court in this Order, the Court requires a revised audit and declaration of amounts due the Trusts. Plaintiffs shall submit such information within **ten (10)** days of the date of this Order.

DATED this  25th  day of July, 2005.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge

---

[3] Plaintiffs appear to state in their reply that the CBA renewed under its evergreen clause because defendant's August 23, 2001 letter was not made 90 or 150 days prior to the August 30, 2003 termination date. To the extent plaintiffs intend to state that, in order to be effectual, notice must occur on dates exactly 90 or 150 days prior to the CBA's expiration date, this argument lacks merit.

[4] The Court finds no merit to defendant's bare assertion that plaintiffs waived any claims by failing to bring a grievance within fifteen days pursuant to Article 2.18 of the CBA.

ORDER
PAGE -7